LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
MICHAEL D. ROTH (SBN 217464)
*mroth@kslaw.com*
SAMUEL C. CORTINA (SBN 310778)
*scortina@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443 4355
Facsimile: (213) 443 4310

Attorneys for Defendant
HISENSE USA CORPORATION

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

STACEE SEVERINO, JILL COHEN, KENNEY REESE, SHARI ETCHEBARREN, and BRANDY MINNER, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

HISENSE USA CORPORATION,

Defendant.

Case No.: 3:26-cv-04379-MMC

**DEFENDANT HISENSE CORPORATION USA'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

*[Declaration of Samuel C. Cortina; Declaration of Qiang Bi; and [Proposed] Order filed concurrently herewith]*

Date: Friday, November 6, 2026
Time: 9:00am
Location: Courtroom 7, 19th Floor
Judge: Hon. Maxine M. Chesney

Action Filed: May 12, 2026
FAC Filed: June 23, 2026

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

PLEASE TAKE NOTICE that on **November 6, 2026, at 9:00am**, or as soon thereafter as the matter may be heard, Defendant Hisense USA Corporation ("Hisense") will bring for hearing before the Honorable Maxine M. Chesney, United States District Court Judge, in Courtroom 7 located on the nineteenth floor of the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, a Motion to Compel Arbitration.

This motion is brought on the grounds that Plaintiff Kenney Reese has a Google TV that, based on the model, is equipped with an operating system ("OS") provided by Google which allows Hisense to introduce settings that can automatically adjust picture and sound modes through utilizing Automated Content Recognition ("ACR")-related functionality, powered by third-party ACR software (the "Enhanced Viewing Service") provided the consumer consents to the Hisense End User License Agreement ("EULA") and Data Protection Policy ("DPP").[1] Mr. Reese agreed to the EULA when he set up his television, and that EULA contains an arbitration provision with a class action waiver that requires Mr. Reese to arbitrate his claims against Hisense on an individual basis, and delegates questions of arbitrability to the arbitrator. The Court thus must compel his claims to arbitration and stay his claims in this action pending the outcome of the arbitration.

With respect to the remaining Plaintiffs—Stacee Severino, Jill Cohen, Shari Etchebarren, and Brandy Minner—they purchased televisions with operating systems (and ACR technology, if any) provided by Roku or Amazon, as applicable, and subject to the terms and conditions provided by Roku and Amazon, as applicable (these four plaintiffs are referred to as the "Roku/Amazon Fire TV Plaintiffs"). In those televisions, Hisense provides only the hardware. Roku and Amazon have their own arbitration agreements covering the use of their operating software, ACR technology (as applicable), and other services. Hisense will promptly serve discovery to learn whether those plaintiffs' claims are also subject to arbitration, and if Hisense learns that they are, it will expeditiously file a motion to compel arbitration.

[1] It bears noting that other Google Smart TVs with Hisense hardware that do not have Enhanced Viewing Service are equipped with a Google operating system, and in those cases, consumers are subject to Google terms and conditions of use and in privity with Google concerning the use of consumers' data.

This Motion is made following the conference of counsel on September 3, 2026. *See* Declaration of Samuel C. Cortina in Support of Hisense's Motion to Compel Arbitration ¶ 5.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities submitted herewith, the declarations of Qiang Bi and Samuel C. Cortina, evidence in support of this motion, the pleadings, papers, and records on file in this case, and such oral argument as may be presented at a hearing.

Dated: September 15, 2026

**KING & SPALDING LLP**

By: /**s**/ *Livia M. Kiser*
LIVIA M. KISER
MICHAEL D. ROTH
SAMUEL C. CORTINA

Attorneys for Defendant HISENSE USA CORPORATION

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF ISSUES ........ 2

III. BACKGROUND ........ 2

- A. Plaintiffs File this Putative Class Action Against Hisense ........ 2
- B. Plaintiff Reese Accepted the EULA During the Setup of His Smart TV ........ 4
- C. The Roku/Amazon Fire TV Plaintiffs ........ 7

IV. THE MOTION TO COMPEL ARBITRATION SHOULD BE GRANTED ........ 7

- A. The Federal Arbitration Act Favors the Efficiency and Expedience of Arbitration ........ 7
- B. Plaintiff Reese and Hisense Formed an Agreement When He Clicked "Accept" ........ 8
  - i. The EULA is Conspicuously Presented in the Setup Flow ........ 9
  - ii. Plaintiff Reese Affirmatively Manifested His Assent to the EULA ........ 11
  - iii. This Dispute Falls within the Broad Scope of the Arbitration Agreement ........ 12
  - iv. The Court Should Dismiss the Class Claims and Stay Plaintiff Reese's Claims Pending the Outcome of Individual Arbitration ........ 14

V. HISENSE RESERVES ITS RIGHT TO SEEK TO COMPEL ARBITRATION OF THE ROKU/AMAZON FIRE TV PLAINTIFFS' CLAIMS PENDING DISCOVERY ........ 15

VI. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple & AT & TM Antitrust Litigation*,
826 F. Supp. 2d 1168 (N.D. Cal. 2011) .......... 16

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 8, 12

*Baumeister v. Nouveau Essentials Mktg., LLC*,
2026 WL 2093903 (N.D. Cal. 2026) .......... 12

*Binder v. Aetna Life Ins. Co.*,
75 Cal. App. 4th 832 (1999) .......... 9

*Brennan v. Opus Bank*,
796 F. 3d 1125 (9th Cir. 2015) .......... 8, 13

*Burgos v. Citibank, N.A.*,
745 F. Supp. 3d 959 (N.D. Cal. 2024) .......... 15

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) .......... 14

*Chien v. Bumble Inc.*,
641 F.Supp.3d 913 (S.D. Cal. 2022) .......... 12

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) .......... 8

*Dahdah v. Rocket Mortg., LLC*,
166 F.4th 556 (6th Cir. 2026) .......... 11

*Daniel v. Fairway Indep. Mortg. Corp.*,
2026 WL 1076002 (N.D. Cal. Apr. 20, 2026) .......... 15

*Deyell v. Hisense USA Corp.*,
2025 WL 3301919 (N.D. Ga. 2025) .......... 1, 8, 9, 10

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 8

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2009) .......... 16

*Green Tree Fin. Corp. v. Randolph*,
531 U.S. 79 (2000) .......... 8

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) .......... 14

*Keebaugh v. Warner Bros. Entm't. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 9, 11

*Kittrell v. USA Debusk LLC*,
2025 WL 3049883 (N.D. Cal. 2025) .......... 14

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) .......... 8

*Kroskey v. Elevate Labs, LLC*,
2025 WL 1507091 (N.D. Cal. May 27, 2025) .......... 9

*Macioce v. Hisense USA Corp.*,
2025 WL 3685179 (S.D.N.Y. 2025) .......... 10

*Martinez v. Refinitiv, Ltd.*,
2024 WL 5424373 (C.D. Cal. 2024) .......... 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) .......... 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 7, 8, 12

*Moyer v. Chegg, Inc.*,
No. 22-CV-09123-JSW, 2023 WL 4771181 (N.D. Cal. July 25, 2023) .......... 9

*Oberstein v. Live Nation Entm't., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 9, 10, 11, 12

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 13, 14

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 7, 8, 13

*Ross v. Shutterfly Lifetouch, LLC*,
2021 WL 4776666 (N.D. Cal. Oct. 13, 2021) .......... 13

*Sandoval v. Mamco, Inc.*,
2025 WL 2369373 (C.D. Cal. Feb. 27, 2025) .......... 15

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... 12

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ........ 8

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ........ 15

*Tercero v. Sacramento Logistics LLC*,
2025 WL 43125 (E.D. Cal. Jan.7, 2025) ........ 15

*Xinhua Holdings Ltd. v. Electronic Recyclers Intern., Inc.*,
2013 WL 6844270 (E.D. Cal. 2013) ........ 15

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) ........ 12

**Statutes**

9 U.S.C. § 2 ........ 7

9 U.S.C. § 3 ........ 15

FAA ........ 7, 8, 12, 13

**Other Authorities**

Federal Rule of Civil Procedure 26(d)(1) ........ 16

## I. INTRODUCTION

Each of Plaintiff Kenney Reese's ("Plaintiff Reese") claims in the First Amended Complaint ("FAC") must be compelled to arbitration pursuant to an arbitration agreement that he entered into with Defendant Hisense USA Corporation ("Hisense") when he set up his Google TV. As for the remaining Plaintiffs, they allegedly purchased Roku or Amazon Fire TVs (the "Roku/Amazon Fire TV Plaintiffs"). The operating systems in those TVs, as well as any ACR functionality, would have been designed, developed, and operated by Roku and Amazon, respectively. Hisense will conduct targeted discovery into the formation of any applicable arbitration agreements with the Roku/Amazon Fire TV Plaintiffs.

In 2022, Plaintiff Reese purchased a Google TV (model 65A6H) that he set up "himself." FAC ¶¶ 31, 33, 34; Cortina Decl., Ex. B ("CLRA letter"). The Google TV has an operating system provided by Google with Enhanced Viewing Service. Declaration of Q. Bi in Support of Motion to Compel Arbitration ("Bi Arbitration Decl."), ¶ 3. A Smart TV is an internet-connected television loaded with a consumer's free and paid streaming apps such as Netflix, YouTube, Hulu, and others. The television will not receive content unless it is connected to the Internet. The setup process for Plaintiff Reese's television requires navigating to a standalone page with conspicuous notice of Hisense's End User License Agreement ("EULA") and also explains that use of the television is subject to the EULA. *Id.*, ¶¶ 6-10 and Ex. A-1. Additionally, to use the smart features on the television, as Plaintiff Reese alleges he has, the user *must* affirmatively check two boxes indicating assent to the EULA, including a standalone box that states: "Accept." *Id.*, ¶¶ 5, 16. Multiple courts have found this exact setup process forms an enforceable agreement. *E.g., Deyell v. Hisense USA Corp.*, 2025 WL 3301919, at *5 (N.D. Ga. 2025) ("[T]he above-depicted TV screen, with two links—one to review the Terms and Conditions and another to acknowledge acceptance of the agreement—gave Plaintiff a sufficient opportunity to review the contract terms and conditions prior to his clicking the 'Accept' link.").

The EULA, in turn, includes an arbitration agreement that requires Plaintiff Reese to pursue

his claims in arbitration and on an individual basis. Bi Arbitration Decl., ¶ 13, Ex. A-1 at 9-10.[2] While the scope of the arbitration agreement is "given the broadest meaning enforceable by law," *id.* at 9—and squarely covers claims Plaintiff Reese has asserted in this case—to the extent there are any questions about arbitrability, the parties to the EULA expressly delegated those questions to the arbitrator, *id*. Under the Federal Arbitration Act, Plaintiff Reese's claims must be compelled to arbitration on an individual basis.

The other four plaintiffs—Stacee Severino, Jill Cohen, Shari Etchebarren, and Brandy Minner (*i.e.*, the Roku/Amazon Fire TV Plaintiffs)—allege that they purchased televisions with an Amazon Fire TV operating system or Roku operating system, which are developed and provided by Amazon and Roku, respectively. FAC ¶¶ 19, 25, 37, 43. Hisense is not in possession of evidence of the consent flow or agreements entered between the Roku/Amazon Fire TV Plaintiffs and those third parties. Hisense therefore will conduct targeted discovery on the arbitrability of their claims consistent with the Federal Rules of Civil Procedure, as the Roku/Amazon Fire TV Plaintiffs may be required to arbitrate their claims against Hisense depending on the terms of the arbitration agreements with those entities.

## II. STATEMENT OF ISSUES

- Whether Plaintiff Reese's claims must be compelled to arbitration on an individual basis.

## III. BACKGROUND

### A. Plaintiffs File this Putative Class Action Against Hisense

Five named plaintiffs bring fourteen different claims on behalf of multiple putative classes, all against one defendant, alleging that their "Smart TVs" used technology called "Automated Content Recognition" ("ACR") to identify "audio and video output from the[ir] television[s]" that was then shared "to deliver targeted advertising across televisions and other connected devices." FAC ¶¶ 73, 80, 93, 97, 220-535.

These allegations are demonstrably untrue as asserted against Hisense. The third-party ACR

---

[2] For purposes of this Motion, Hisense refers to Exhibit A-1 as the operative EULA. The arbitration provision and class action waiver in each version of the EULA identified in the Bi Arbitration Decl. is materially the same. *See*, *e.g*., Bi Arbitration Decl., Exs. A-1, A-2, A-3 and ¶ 14.

technology that is incorporated into certain Google TVs does not itself identify or record any audio or visual output from a television. *See* Declaration of Q. Bi in Support of Motion to Dismiss ("Bi MTD Decl."), ¶¶ 4, 17-18. The ACR software is used to provide the Enhanced Viewing Service. To do so, it locally receives samples of audio from within the TV; it converts the audio locally into a fingerprint using a one-way hashing algorithm (which cannot be reverse-engineered to identify the audio sample); it compares the fingerprint to audio fingerprints in a content library on a third-party (Nexxen) server; and then it feeds back to the TV the type of program that is being shown on the television so that the TV automatically can adjust the visual settings to be optimal for that type of program (*e.g.*, movies, sports). *Id.* The raw audio and audio samples *do not ever leave the television* as part of the ACR functionality. *Id.*

As these facts show, Plaintiffs' inflammatory accusations about surveillance are entirely unfounded; data is processed throughout this system to improve the user's viewing experience.

The Smart TVs that each of the Plaintiffs purchased do not use the same ACR technology and operating systems, all of which are developed and operated by third parties.[3] Bi MTD Decl., ¶¶ 4, 8. Only one of the named plaintiffs, Kenney Reese, claims to have purchased a Smart TV that uses an operating system and ACR technology from Hisense (but this allegation is not true). *See* FAC ¶ 31. In fact, however, the TV he purchased is a Google TV with a Google operating system with certain Hisense customization and ACR service from a third-party provider, Nexxen. Bi MTD Decl., ¶ 4. Because the Enhanced Viewing Service was customized by Hisense in the TV hardware itself, during the setup of the television, Plaintiff Reese was presented with, and assented to, Hisense's End User License Agreement ("EULA") and Data Protection Policy ("DPP"). *See* Section III.B, *infra*.

The other four plaintiffs disclosed in a CLRA letter they sent to Hisense after they filed their lawsuit that the Smart TVs they purchased use third-party operating systems and ACR technology (if any), as follows:

[3] An operating system refers to the software that runs a Smart TV. It includes the set of instructions deciding what audio is played, what images are displayed, and what features are available, and it communicates with servers and applications to execute those functions.

| Consumer (Residence) | Smart TV Model | Approx. Purchase Year | Operating System |
|---|---|---|---|
| Stacee Severino (Crescent City, CA) | 55R6E | 2018 | Roku OS |
| Jill Cohen (Chino, CA) | 65QD65NF | 2025 | Amazon Fire TV |
| Kenney Reese (Los Angeles, CA) | 65A6H | 2022 | Google TV |
| Shari Etchebarren (Diamond Bar, CA) | 32H4030F4 | 2025 | Roku OS |
| Brandy Minner (Stockton, CA) | 43H4030F4 | 2025 | Roku OS |

Declaration of Samuel C. Cortina ("Cortina Decl."), Ex. B ("CLRA Letter"); *see also* FAC ¶ 19 (Severino); ¶ 37 (Etchebarren); ¶ 43 (Minner); ¶ 25 (Cohen).

Hisense was not involved with the design, development or customization of the Roku TV or Amazon Fire TV operating systems and has no knowledge of whether they utilize ACR technology at all. Bi MTD Decl., ¶ 8. If they do, the ACR technology would be proprietary to Roku or Amazon, as applicable. *Id*. Hisense also does not collect, receive, process or have access to any data that may (or may not) be collected or transmitted from these Smart TVs; and Hisense's EULA and privacy policy are not presented to the users of these Smart TVs at setup. *Id.*, ¶¶ 8-10.

**B. Plaintiff Reese Accepted the EULA During the Setup of His Smart TV**

Plaintiff Reese alleges that he purchased the Google TV in "approximately 2022" and set it up "himself." FAC ¶¶ 31, 34. He acknowledges that, "[d]uring the setup process, consumers are required" to engage with a consent flow that permits users to "opt-in" to Hisense's End User License Agreement ("EULA"). FAC ¶¶ 90, 159, 165.[4] During the setup process relevant to enabling any ACR technology, Plaintiff Reese was presented with the following screen, titled "Terms and Conditions, Privacy Policy" (in large white font offset against a black background):

[4] In the Complaint, each Plaintiff alleged that they had assented to the EULA. ECF No. 1, ¶ 456 (alleging that there was an "implied contract between each Plaintiffs and Hisense … established by …. Hisense's End User Terms and Conditions effective February 1, 2019, and Hisense's End User License Agreement effective April 30, 2023, each of which is presented to the consumer directly by Hisense (not by the retailer) during initial device setup and which the consumer must accept by clicking 'Agree' before being permitted to use the Hisense Smart TV[.]"). Plaintiffs voluntarily amended the Complaint, with the primary revision to remove that allegation.




Bi Arbitration Decl., ¶ 9. Immediately below the title is a disclosure, also in prominent white text against a black background, that: "Your use of this device is subject to the End User License Agreement and applicable privacy policy[.]"[5] *Id.*, ¶ 10. This disclosure is followed by individual checkboxes for the EULA and for the Data Protection Policy (as well as an option to select "All"). *Id.*, ¶¶ 11-12. To the right of "End User License Agreement" is a "View details" button the user can click to view the complete EULA. *Id.*, ¶ 12. If the user proceeds to "View details," they are presented with the entire EULA, from beginning to end, in white text offset against a black screen, that they can scroll through and read as slowly as they need. *Id.*

Toward the top right of this screen, a user has the option of clicking "Accept" or "Skip." Bi Arbitration Decl., ¶ 15. A user can click "Accept" only if one of the boxes is checked. *Id.* A user need not "Accept" the EULA or any of the other terms or policies listed on this screen. *Id.* Only by accepting the EULA can a user access certain smart features, including the Enhanced Viewing feature that uses ACR, on the television. *Id.*, ¶¶ 5, 16. Because Plaintiff Reese alleges that the ACR function operated on his Smart TV, he necessarily reviewed this page and clicked

[5] If the user continues to scroll down, the complete text reads: "Your use of this device is subject to the End User License Agreement and applicable privacy policy, lack of your acceptance will turn off all smart features of this device. You can choose to turn on/off each type of smart feature separately displayed below at any time. A click on the box of each type of smart feature means you choose to give your consent to the corresponding privacy notice/terms and conditions. Please read the details of them carefully before you choose." Bi Arbitration Decl., ¶ 10.

"Accept" on the EULA. *Id.*, ¶ 16.

By clicking "Accept," a user agrees that the EULA "is a legal agreement" between them and Hisense. Bi Arbitration Decl., ¶ 13, Ex. A-1 at 1. The EULA states that, "By using the Device, installing and/or using and/or accessing or using the Smart Services through this Device, or any other features of functionality made available on your Device, you agree to be legally bound and abide by this EULA." *Id.*

There is a standalone section in the EULA titled, in all capital letters and bold font: "DISPUTE RESOLUTION AND ARBITRATION; CLASS ACTION WAIVER." Bi Arbitration Decl., ¶ 13, Ex. A-1 at 9. Below that header the user is told, in bold font, "Please Read This Provision Carefully. It Affects Your Legal Rights." *Id.* Immediately below that sub-header is the EULA Arbitration Agreement, requiring individual arbitration of "any dispute" between the user and Hisense, including (a) any "claims or controversy, whether based in contract, statute, regulation, ordinance, tort – including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence," and (b) disputes over "the validity, enforceability or scope of this Provision (with the exception of the enforceability of the Class Action Waiver clause below)." *Id.* The EULA emphasizes this provision with another all-capital-letter term:

> EVERYONE AGREES THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL DISPUTES, AS DEFINED ABOVE, WHETHER PRESENTLY IN EXISTENCE OR BASED ON ACTS OR OMISSIONS IN THE PAST OR IN THE FUTURE, WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT IN ACCORDANCE WITH THIS PROVISION.

*Id.*

The EULA Arbitration Agreement provides that the Federal Arbitration Act ("FAA") "governs the arbitrability of all disputes." Bi Arbitration Decl., ¶ 13, Ex. A-1 at 10. It also provides that the American Arbitration Association ("AAA") or JAMS will arbitrate disputes between the parties. *Id.* The EULA Arbitration Agreement allows users to "OPT-OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE THAT YOU FIRST CONSENT TO THESE TERMS" and provides clear instructions on how to exercise an opt-out. *Id.* at 9-10. Hisense has no record of Plaintiff Reese opting out. Bi Arbitration Decl., ¶

17.

### C. The Roku/Amazon Fire TV Plaintiffs

The Roku/Amazon Fire TV Plaintiffs allege that they purchased Smart TVs with Roku or Amazon operating systems. FAC ¶¶ 19, 25, 37, 43; *see also* Cortina Decl., Ex. A (CLRA Letter). If their TVs contain ACR functionality, those Smart TVs have technology that is proprietary to Roku or Amazon. Bi MTD Decl., ¶¶ 4, 8-10. They thus do not present Hisense's EULA, Hisense's privacy policy, or any other Hisense disclosure during the setup. *Id.*, ¶ 11. However, both Amazon and Roku have publicly available terms and conditions that apply to their own products and services, both of which include arbitration agreements with class action waivers. Cortina Decl., Exs. C & D. There may also be other arbitration agreements with Amazon and Roku, or other third parties, that cover this dispute of which Hisense is currently unaware. Hisense needs to take discovery of the consent flow process for each of the Roku/Amazon Fire TV Plaintiffs to confirm they were presented with those terms and conditions and accepted them, and if so, whether Hisense itself can enforce those agreements to arbitrate.

## IV. THE MOTION TO COMPEL ARBITRATION SHOULD BE GRANTED

### A. The Federal Arbitration Act Favors the Efficiency and Expedience of Arbitration

The Federal Arbitration Act (the "FAA") "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Section 2, the FAA's main substantive provision, provides:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Congress's "clear intent" in enacting the FAA was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Accordingly, "[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*

*Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The party opposing enforcement of the arbitration agreement bears the heavy burden of proving that the claims are not subject to arbitration. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Arbitration agreements may also include delegation clauses. A "delegation provision" is an antecedent agreement "to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr.*, 561 U.S. at 68. "[T]he FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70.

**B. Plaintiff Reese and Hisense Formed an Agreement When He Clicked "Accept"**

Consistent with other courts who have addressed this very issue, the Court must compel Plaintiff Reese's claims to individual arbitration because he agreed to the EULA during the television setup process. Bi Arbitration Decl., ¶¶ 5, 15-16; *Deyell*, 2025 WL 3301919, at *5. To the extent there were any doubt about the applicability of the arbitration clause or its scope (and there is not), the EULA delegates questions of arbitrability to the arbitrator, so this Court must also compel those threshold questions to the arbitrator. Bi Arbitration Decl., ¶ 13, Ex. A-1 at 9. The FAA embodies an "emphatic federal policy in favor of" arbitration. *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011). Because of this federal policy, "[t]he standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F. 3d 1125, 1130 (9th Cir. 2015). Parties, however, "can agree to arbitrate" these "gateway questions of arbitrability," as Plaintiff Reese expressly did here. *Rent-A-Ctr*, 561 U.S. at 68-69 (cleaned up).

To decide whether an arbitration agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In California, "mutual assent is the key to contract formation." *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (citing *Binder v. Aetna Life Ins. Co.*,

75 Cal. App. 4th 832, 850 (1999)).

To analyze mutual assent in the online context, internet contracts are classified "by the way in which the user purportedly gives their assent to be bound by the associated terms" and generally fall on a spectrum ranging from "clickwrap" to "browsewrap." *Keebaugh v. Warner Bros. Entm't. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citation omitted). "'Clickwrap agreements' are agreements in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091, at *3 (N.D. Cal. May 27, 2025). Another highly enforceable form of online contracts are "sign-in wrap agreements, also known as 'modified clickwrap agreement[s],' whereby a user is 'notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service.'" *Id.* (quoting *Moyer v. Chegg, Inc.*, No. 22-CV-09123-JSW, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023)). "Browsewrap agreements, on the other end of the [enforceability] spectrum, are agreements in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.*

As set forth above, Plaintiff Reese assented to the EULA containing the arbitration clause by affirmatively agreeing to those terms in an enforceable "clickwrap" agreement. *Deyell*, 2025 WL 3301919, at *4 (describing the Hisense Smart TV setup flow as follows: "The above screen represents a 'clickwrap' agreement, or 'one in which an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available.").

Clickwrap agreements like this are given effect when "(1) the [page] provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Entm't., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023). Those two elements are satisfied here.

**i. The EULA is Conspicuously Presented in the Setup Flow**

To be reasonably conspicuous, "a notice must be displayed in a font size and format such

that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* Courts look to "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design" in determining "whether a reasonably prudent user would have inquiry notice." *Id.* Specifically, courts consider things such as the (1) color of the text; (2) whether or not it is "readily apparent" a hyperlink to the terms exists; (3) whether the page "denotes 'that continued use [of the website] will act as'" an agreement to be bound; and (4) if the page is over-cluttered so as to direct the users attention somewhere other than the terms. *Id.* at 516-17 (affirming order compelling arbitration where these factors were met, notice was reasonably conspicuous, and plaintiff manifested assent).

The Hisense setup flow checks each of these boxes. It includes a standalone page with a large title stating: "Terms and Conditions, Privacy Policy." Bi Arbitration Decl., ¶ 9. The text is white against a black background and, in Plaintiff Reese's case, was displayed across a 65-inch television screen (i.e., over five feet of display). *Id.*; FAC ¶¶ 31, 33. There is nothing else presented on the page beyond the three agreements that govern the use of the Smart TV (the EULA, the privacy policy, and the enhanced viewing policy), with the EULA standing out in multiple places. Bi Arbitration Decl., ¶ 9. The link to the full language of the EULA is set apart in a box titled: "View Details." *Id.*, ¶ 12. If clicked, the entire EULA is presented to the viewer in legible text, and the user may scroll through the EULA at whatever pace they require to review. *Id.* Moreover, to continue with the setup, the user is presented with two options: "Accept" or "Skip." To "Accept" the EULA, the user must *also* affirmatively check the "All" box or the box directly next to the EULA. *Id.*, ¶¶ 15-16.

In *Deyell*, the court reviewed this same setup flow and easily found that it put the user on notice of the terms of the EULA: "The Court finds that the above-depicted TV screen, with two links—one to review the Terms and Conditions and another to acknowledge acceptance of the agreement—gave Plaintiff a sufficient opportunity to review the contract terms and conditions prior to his clicking the 'Accept' link." 2025 WL 3301919, at *5; *see also Macioce v. Hisense USA Corp.*, 2025 WL 3685179, at *12 (S.D.N.Y. 2025) ("Macioce is therefore also obliged to arbitrate his claims against Hisense based on the arbitration clause in the EULA."). Ample Ninth Circuit

authority supports the same conclusion. *See, e.g.*, *Oberstein*, 60 F.4th at 515-17 (affirming order compelling arbitration where the terms were hyperlinked in a different color from the rest of the page and contained a notification that "By continuing past this page and clicking 'Place Order', you agree to our Terms of Use."); *see, also*, *Keebaugh*, 100 F.4th at 1020–21 (agreement was "conspicuous and put[] the reasonable user on notice" where the webpage "lack[ed] clutter[,]" "design elements use[d] a contrasting font color making the notice legible[,]" and the notice appeared "[d]irectly beneath the operative play button[.]"); *Dahdah v. Rocket Mortg., LLC*, 166 F.4th 556, 566-81 (6th Cir. 2026) (similar).

Moreover, the context of the transaction informs whether notice of an online agreement is reasonably conspicuous, with the expectation of "some sort of continuing relationship" found to "put users on notice for a link to the terms of that continuing relationship." *Oberstein*, 60 F.4th at 517 (cleaned up). In *Keebaugh*, the Ninth Circuit reasoned that downloading a mobile app onto a phone is materially different than visiting a website for these purposes, and in the former experience, a reasonable user should expect "an ongoing relationship" and thus would be on heightened notice that they would be subject to terms and conditions. 100 F.4th at 1020. The same logic applies to a Smart TV installed in a person's home, connected to Wi-Fi, and providing an ongoing experience. In fact, Plaintiff's ongoing use of features on his interactive Smart TV was *conditioned* on acceptance of the EULA—*i.e.*, he could not have utilized the ACR Technology without agreement to the EULA. Bi Arbitration Decl., ¶¶ 15-16.

In short, Plaintiff Reese not only was presented with conspicuous notice of the EULA in clear font in a standalone page, told that his use of the Smart TV was subject to the EULA, and given the opportunity to review the entire EULA at his own pace, but he also had heightened notice that there would be terms and conditions applying to his ongoing use of a smart television.

**ii. Plaintiff Reese Affirmatively Manifested His Assent to the EULA**

The second part of the test of a clickwrap agreement's formation—whether the user takes some action that unambiguously manifests assent—is relatively straightforward. "A user's click of a button can be construed as an unambiguous manifestation of assent" as long as "*the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an*

*agreement*." *Oberstein*, 60 F.4th at 515 (emphasis supplied). Plaintiff Reese was told: "A click on the box of each type of smart feature means you choose to give your consent to the corresponding privacy notice/terms and conditions. Please read the details of them carefully before you choose." Bi Arbitration Decl., ¶ 10. He was provided a link with the terms of the EULA, and he checked the box next to the EULA link (or the "All" box) *and* checked the additional box with the word "Accept." *Id.*, ¶¶ 9-12, 15-16. That is quintessential assent under California law, which explains that "[a] '*clickwrap*' agreement is one in which an internet user accepts a website's terms of use by clicking an 'I agree' or '*I accept*' button, with a link to the agreement readily available." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021) (second emphasis added); *see also Baumeister v. Nouveau Essentials Mktg., LLC*, 2026 WL 2093903, at *4 (N.D. Cal. 2026) (clicking "continue" manifested assent to the terms and conditions); *Chien v. Bumble Inc.*, 641 F.Supp.3d 913, 935 (S.D. Cal. 2022) ("the fact that the yellow button said 'I accept' would have further put the user on notice that they could be manifesting assent to an agreement").

**iii. This Dispute Falls within the Broad Scope of the Arbitration Agreement**

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp*., 460 U.S. at 24–25. Thus, where a contract includes an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc*., 475 U.S. at 650 (internal quotations removed). This "presumption is particularly applicable" to broad arbitration clauses, *id.*, like this one, which "cover[s] disputes 'relating to' a particular agreement." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). Such clauses "apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Id.*

The arbitration clause in the EULA offers the broadest possible definition of "dispute":

> This Provision facilitates the prompt and efficient resolution of *any dispute* (e.g., claim or controversy, whether based in contract, statute, regulation, ordinance, tort – including, but not limited to, fraud, misrepresentation,

> fraudulent inducement, or negligence – or any other legal or equitable theory, and includes the validity, enforceability or scope of this Provision (with the exception of the enforceability of the Class Action Waiver clause below) *that may arise between You and Us*. Effectively, then, *"dispute" is given the broadest meaning enforceable by law* and includes any claims against other parties relating to services or products provided or billed to You (such as Our licensors, suppliers, dealers or third-party vendors) whenever You also assert claims against Us in the same proceeding.

Bi Arbitration Decl., ¶ 13, Ex. A-1 at 9 (emphases supplied). This lawsuit is a "claim or controversy … between [Plaintiff Reese] and [Hisense]." *Id.* Thus, by the express and plain language of the definition of "dispute," the claims asserted in this lawsuit fit within the scope of the arbitration agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985) ("insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability").

Even if there were any doubt that the arbitration clause requires arbitration of Plaintiff Reese's claims, and there is not, the arbitrator, not this Court, would have to resolve the question. "While the general rule is that a district court decides whether a claim falls within the scope of an arbitration agreement, such questions 'can be expressly delegated to the arbitrator where the [contracting] parties *clearly and unmistakably* provide otherwise." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); alterations in *Patrick*). Similarly, the parties can agree to arbitrate "gateway" issues of enforceability. *Rent-A-Center*, 561 U.S. at 70. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement… and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Ross v. Shutterfly Lifetouch, LLC*, 2021 WL 4776666, at *5 (N.D. Cal. Oct. 13, 2021).

The EULA clearly and unmistakably delegates questions of arbitrability to the arbitrator, as it requires arbitration of any claims or controversies between Plaintiff Reese and Hisense, including, specifically, any claims or controversies about "the validity, enforceability or scope of this Provision (with the exception of the enforceability of the Class Action Waiver clause below)." Bi Arbitration Decl., ¶ 13, Ex. A-1 at 9.

The Ninth Circuit and district courts routinely enforce such delegation clauses. For example, in *Patrick*, the delegation provision was attached to a "terms of use" hyperlink, and consumers in the process of placing an order had to click a button near a statement that informed them that, by placing their order, they were agreeing to the "terms of use." *Patrick*, 93 F.4th at 474. The terms of use included a provision that stated, "jurisdictional and arbitrability disputes, including disputes over the *formation, existence, validity, interpretation or scope* of the agreement under which Arbitration is sought and who are the proper parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." *Id*. at 481 (emphasis added). The delegation clause here is materially identical by delegating all claims or controversies regarding the "validity, enforceability or scope of" the arbitration agreement. Bi Arbitration Decl., ¶ 13, Ex. A-1 at 9.

Because arbitrability "can be expressly delegated to the arbitrator where the contracting parties *clearly and unmistakably* [agree to do so]," as they have here, the Court should grant the motion to compel arbitration and must delegate any questions about arbitrability to the arbitrator. *Patrick*, 93 F.4th at 480.[6]

**iv. The Court Should Dismiss the Class Claims and Stay Plaintiff Reese's Claims Pending the Outcome of Individual Arbitration**

The Supreme Court has held that arbitration agreements can generally waive class and representative claims. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 352 (2011). The EULA to which Plaintiff Reese agreed includes a class action waiver and prohibits Plaintiff Reese from being a class representative or participating in a class action:

> Except as otherwise provided in this Provision, *the arbitrator may not*

---

[6] Nor can Plaintiff avoid this result by attempting to characterize the FAC as seeking public injunctive relief. *Kittrell v. USA Debusk LLC*, 2025 WL 3049883, at *9 (N.D. Cal. 2025) (quoting *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 538 (9th Cir. 2021). Courts routinely reject attempts by plaintiffs to mislabel the relief they are requesting after finding that the relief would primarily benefit a discrete class of individuals while only incidentally benefiting the public. *See id.* at *9 (disregarding plaintiff's characterization of the requested relief as public because it would primarily benefit the employees affected by the employer's alleged misconduct); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870 (9th Cir. 2021) ("the relief sought by Plaintiffs—to 'enjoin Uber from misclassifying its drivers as independent contractors, thus entitling them to the protections of Massachusetts wage laws, including paid sick leave'—is overwhelmingly directed at Plaintiffs and other rideshare drivers" and the related public health benefits are only incidental); *Martinez v. Refinitiv, Ltd.*, 2024 WL 5424373, at *5 (C.D. Cal. 2024) (relief was private because it would benefit "Citibank customers and/or Citibank customers with criminal convictions").

> *consolidate more than one person's claims, and may not otherwise preside over any form of a class or representative proceeding or claims (such as a class action*, consolidated action, representative action, or private attorney general action) unless both You and We specifically agree to do so in writing following initiation of the arbitration. **If You choose to pursue Your Dispute in court by opting out of the Arbitration Provision, as specified above, this Class Action Waiver will not apply to You.** Neither You, nor any other user of this Website can be a class representative, class member, or otherwise participate in a class, consolidated, or representative proceeding without having complied with the opt-out requirements above.

Bi Arbitration Decl., ¶ 13, Ex. A-1 at 9 (italics supplied; bolded text in original).

Therefore, when the Court compels Plaintiff Reese's claims to arbitration, it should do so on an individual basis, dismiss the residual proposed class claims, and stay Plaintiff Reese's individual claims pending arbitration. *See* 9 U.S.C. § 3 (requiring that federal courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had"); *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (overturning Ninth Circuit rule that allowed court to dismiss, rather than stay, action after compelling arbitration); *Burgos v. Citibank, N.A.*, 745 F. Supp. 3d 959, 967 (N.D. Cal. 2024) (compelling individual arbitration, dismissing putative class claims, and staying the remainder of the action pending individual arbitration in accordance with *Smith*); *Daniel v. Fairway Indep. Mortg. Corp.*, 2026 WL 1076002, at * 5 (N.D. Cal. Apr. 20, 2026) (same); *Sandoval v. Mamco, Inc.*, 2025 WL 2369373, at * 9 (C.D. Cal. Feb. 27, 2025) (same); *Tercero v. Sacramento Logistics LLC*, 2025 WL 43125, at *13–14 (E.D. Cal. Jan.7, 2025) (same).

## V. HISENSE RESERVES ITS RIGHT TO SEEK TO COMPEL ARBITRATION OF THE ROKU/AMAZON FIRE TV PLAINTIFFS' CLAIMS PENDING DISCOVERY

Under California law, the Roku/Amazon Fire TV Plaintiffs may be required to arbitrate their claims against Hisense based on arbitration agreements they may have entered with Roku and Amazon—*i.e.*, the third parties that provide the operating systems and any ACR technology in their Smart TVs. *See Xinhua Holdings Ltd. v. Electronic Recyclers Intern., Inc.*, 2013 WL 6844270, at *5 (E.D. Cal. 2013) ("[T]here are legal theories, such as agency and estoppel, in which non-signatories to an arbitration agreement [such as Hisense] may compel … arbitration."); *In re Apple*

*& AT & TM Antitrust Litigation*, 826 F. Supp. 2d 1168, 1176 (N.D. Cal. 2011) ("[T]he Ninth Circuit has recognized that under principles of equitable estoppel a non-signatory may compel a signatory to an arbitrate."); *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009) ("A signatory to an agreement with an arbitration clause cannot 'have it both ways'; the signatory cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.") (cleaned up).

Hisense does not currently know what arbitration agreements, if any, the Roku/Amazon Fire TV Plaintiffs entered that may require them to arbitrate their claims against Hisense. Moreover, Federal Rule of Civil Procedure 26(d)(1) prohibited Hisense from conducting discovery until after the Rule 26 meet and confer conference was held. Hisense will therefore promptly serve discovery on the Roku/Amazon Fire TV Plaintiffs to determine the formation and enforceability of any applicable arbitration agreements. If the Roku/Amazon Fire TV Plaintiffs' responses show that they must arbitrate their claims against Hisense, then Hisense will promptly file an additional motion to compel arbitration.

## VI. CONCLUSION

For the foregoing reasons, Hisense respectfully requests the Court grant this motion.

**KING & SPALDING LLP**

By: <u>/s/ *Livia M. Kiser*</u>
LIVIA M. KISER
MICHAEL D. ROTH
SAMUEL C. CORTINA

Attorneys for Defendant HISENSE USA CORPORATION