LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
MICHAEL D. ROTH (SBN 217464)
*mroth@kslaw.com*
SAMUEL C. CORTINA (SBN 310778)
*scortina@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443 4355
Facsimile: (213) 443 4310

Attorneys for Defendant
HISENSE USA CORPORATION

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

STACEE SEVERINO, JILL COHEN, KENNEY REESE, SHARI ETCHEBARREN, and BRANDY MINNER, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

HISENSE USA CORPORATION,

Defendant.

Case No.: 3:26-cv-04379-MMC

**DEFENDANT HISENSE USA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*[Declaration of Livia M. Kiser; Declaration of Qiang Bi; and [Proposed] Order filed concurrently herewith]*

Date: Friday, November 6, 2026
Time: 9:00 a.m.
Courtroom: Courtroom 7, 19th Floor
Judge: Hon. Maxine M. Chesney

Action Filed: May 12, 2026
FAC Filed: June 23, 2026

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on November 6, 2026 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Maxine M. Chesney of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom 7 - 19th Floor, Defendant Hisense USA Corporation ("Hisense") will and hereby does move the Court to dismiss Plaintiffs' First Amended Complaint (the "FAC"), with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Qiang Bi, the Declaration of Livia M. Kiser and exhibits thereto, all pleadings, papers, and records on file in this case, all matters of which the Court may take judicial notice, and such other or further material as may be presented at or before the hearing on this Motion.

The grounds for this Motion are that Plaintiffs' claims should be dismissed under Rule 12(b)(1) because Plaintiffs' FAC cannot survive a facial or factual challenge to Article III standing. Alternatively, Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a claim. Because the deficiencies in the FAC cannot be cured, Hisense moves for dismissal with prejudice.

This Motion is made following the conference of counsel on September 3, 2026.

DATED: September 15, 2026

**KING & SPALDING LLP**

By: */s/ Livia M. Kiser*
LIVIA M. KISER
MICHAEL D. ROTH
SAMUEL C. CORTINA

Attorneys for Defendant
HISENSE USA CORPORATION

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF ISSUES PRESENTED IN THIS MOTION ........ 2

III. FACTUAL BACKGROUND ........ 3

A. Plaintiffs' Hisense TV hardware is controlled by various third-party OSs. ........ 3

B. Automatic Content Recognition (ACR) Technology ........ 3

C. Plaintiffs' Allegations against ACR Software ........ 4

IV. LEGAL STANDARD ........ 4

V. PLAINTIFFS DO NOT HAVE ARTICLE III STANDING ........ 5

A. The Roku/Amazon TV Plaintiffs lack Article III standing because their claims are directed to third-party conduct. ........ 5

B. The FAC should thus be dismissed for lack of standing because they fail to allege any concrete, particularized, or actual injury. ........ 7

(1) The FAC does not articulate a legally protected interest in the information allegedly captured by ACR software. ........ 7

(2) Nor does the FAC allege any concrete injury to any Plaintiff. ........ 9

VI. PLAINTIFFS FAIL TO STATE A CLAIM AGAINT HISENSE ........ 11

A. Plaintiff Reese Fails to State a Claim against Hisense ........ 11

B. The Roku/Amazon TV Plaintiffs Fail to State a Claim ........ 12

(1) They fail to state a claim for violation of CIPA (Counts IV, V, VI) ........ 12

a) Section 638.51 does not apply to internet-connected devices ........ 12

b) Plaintiffs have not identified "signaling information" ........ 13

c) Plaintiffs have not identified a "pen register" ........ 14

d) Plaintiffs do not state a claim for eavesdropping ........ 15

e) CIPA does not apply extraterritorially ........ 15

(2) They fail to state a claim for invasion of privacy (Counts I, II, III) ........ 16

(3) They fail to state a violation of the Federal Wiretap Act (Count VIII) ........ 17

(4) They fail to state a violation of CDAFA (Count VII) ........ 18

(5) They fail to state a violation of VPPA (Count IX) ........ 19

(6) They fail to state a claim for negligence (Count X) ........ 20

(7) They fail to state a claim for equitable relief (Counts XI, XII, XIII) ........ 20

(8) They do not actually request public injunctive relief (Count XIV) ........ 21

VII. THE DEFICIENCIES IN THE FAC CANNOT BE CURED ........ 21

VIII. CONCLUSION ........ 21

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888 (N.D. Cal. 2026) .......... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5, 11, 12

*Aviles v. Liveramp, Inc.*, 2025 WL 487196 (Cal. Super., Jan. 28, 2025) .......... 15

*Barrales et al v. Reckitt Benckiser LLC*, 2026 WL 2212867 (N.D. Cal. July 31, 2026) .......... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 12, 17

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 17

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 8

*Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29 (2007) .......... 19

*Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .......... 19

*Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013) .......... 18

*Dalfio v. Orlansky-Wax, LLC*, 2022 WL 3083323 (9th Cir. Aug. 3, 2022) .......... 5

*Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036 (1999) .......... 16

*Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 13

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .......... 20

*In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015) .......... 10

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ..... 19

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..... 17

*Fields v. Twitter, Inc.*,
217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) ..... 18

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ..... 15

*Gouch, et al. v. Blue Cross Blue Shield Assn.*,
2026 WL 2283102 (N.D. Ill. Aug. 7, 2026) ..... 8

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ..... 13

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ..... 20

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..... 16, 17

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) ..... 21

*Janicki Logging Co. v. Mateer*,
42 F.3d 561 (9th Cir. 1994) ..... 21

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ..... 11

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ..... 9

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ..... 13

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ..... 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 550 (1992) ..... 5, 7

*Mehr v. Fed'n Internationale de Football Ass'n*,
115 F. Supp. 3d 1035 (N.D. Cal. 2015) ..... 20

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) ........ 13

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 17, 18

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ........ 7

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ........ 19

*Morrison v. Nat'l Australia Bank*,
561 U.S. 247 (2010) ........ 15

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) ........ 7, 8

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 8

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 5

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Jan. 27, 2025) ........ 12

*Sexton v. Spirit Airlines, Inc.*,
2023 WL 1823487 (E.D. Cal. Feb. 8, 2023) ........ 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 4, 5, 7, 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 5

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........ 9

*In re USA Today Co., Inc. Internet Tracking Litig.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ........ 7

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 17

**Statutes**

18 U.S.C. § 2710(b)(1) ........ 19, 20

Cal. Civ. Code § 1798.100 ........ 13

Cal. Civ. Code § 1798.135 ..... 13

Cal. Penal Code § 631 ..... 4, 13, 17

Cal. Penal Code § 632 ..... 4, 15

Cal. Penal Code § 638.50(b)-(c) ..... 4, 13, 14

Cal. Penal Code § 638.51 ..... 4, 13

Cal. Penal Code § 638.52 ..... 13

Cal. Penal Code § 638.52(d)(3) ..... 13

**Rules**

Fed. R. Civ. P. 12(b)(1), (6) ..... 2, 4, 5, 11, 12

**Other Authorities**

CIPA § 632 ..... 15

https://www.hisense-usa.com/compliance/end-user-terms-and-conditions-(effective-date%3A-february-1%2C-2019) ..... 9

https://www.hisense-usa.com/compliance/end-user-license-agreement-(effective-date%3A-april-30%2C-2023) ..... 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs' putative class action is an exercise in smoke and mirrors. Plaintiffs sue Hisense, a hardware manufacturer of internet-enabled (*i.e.*, "Smart") televisions ("TV hardware") for alleged conduct of third parties: namely, Google, Roku and Amazon. These third parties provide operating systems ("OS") and other software that controls the Hisense's TV hardware, and then they sell the TVs under their own brands. The First Amended Complaint ("FAC") admits this.

The FAC centers on automatic content recognition ("ACR") software, which is an optional feature on some Smart TVs to optimize users' viewing experience. ACR functions differently depending on the specific hardware and software used. Plaintiffs do not grapple with these fundamental (and material) distinctions. Notably, only certain versions of Google TV run on a Google TV OS that allows Hisense customization flexibility to introduce the Enhanced Viewing Service, powered by third-party ACR software (the "EV Service"). But the ACR data collected by the third-party ACR software is never shared with Hisense. To the extent Roku and Amazon offer ACR on their TVs, that functionality is proprietary to them. Hisense is not involved with the design, development, or customization of ACR on those TVs, nor does it receive or have access to any ACR data that may be collected by their ACR functionality. The FAC fails as a matter of law.

As a threshold matter, Plaintiff Reese (whose claims are based on a Google TV with Hisense customization, the use of which is therefore subject to Hisense's End User License Agreement ("EULA") and the arbitration provisions therein) is required to arbitrate his claims individually against Hisense. *See* Dkt. 31 (Hisense Motion to Compel Arbitration as to Plaintiff Reese). As to the remaining Plaintiffs, Hisense advises the Court in that parallel motion that it will seek targeted discovery to determine whether those Plaintiffs, too, agreed to arbitrate their claims and whether Hisense has a basis to enforce those arbitration agreements. If so, Hisense anticipates filing a motion to compel arbitration as to the other Plaintiffs in short order.

Plaintiff Reese[1] and the remaining four Plaintiffs (the "Roku/Amazon Fire TV Plaintiffs")

---

[1] For purposes of this motion, Hisense is arguing in the alternative that even if Plaintiff Reese was not required to arbitrate his claims individually, the claims would still fail as a matter of law.

lack Article III standing. The Roku/Amazon Fire TV Plaintiffs do not allege injuries traceable to or redressable by Hisense. ACR software (if any) on Roku or Amazon Fire TVs is designed and developed by Roku and Amazon respectively. Hisense provides only the hardware, nothing else.

Additionally, all five named Plaintiffs lack Article III standing because they fail to allege any concrete, particularized injury in fact. All of Plaintiffs' claims rest on the allegedly "surreptitious" collection of browsing and device data purportedly collected by ACR software, which the FAC labels "Sensitive Information." But under controlling Ninth Circuit authority, browsing and device data are insufficient to establish an injury in fact under Article III. Speculative assertions that this data could be used to infer personal attributes or has "independent economic value" are unsupported by any factual allegations of actual harm to any Plaintiff.

In addition, and/or alternatively, the FAC should be dismissed for failure to state a claim under Rule 12(b)(6). The FAC pleads fourteen causes of action—a transparent attempt to shoehorn a single (flawed) theory into as many statutory and common-law boxes as possible. Though he is required to pursue his claims in arbitration, Plaintiff Reese's claims still would fail at the outset because, accepting the FAC's allegations as true for purposes of this Motion, he necessarily consented to ACR data collection under Hisense's policies when he enabled EV Service, defeating all his claims from the get-go. The remaining Plaintiffs' CIPA, invasion-of-privacy, Federal Wiretap Act, CDAFA, VPPA, negligence, and equitable relief claims each independently fail to plead sufficient facts to plead the specific violations that those laws are meant to address.

Because these deficiencies plague all of Plaintiffs' claims and cannot be cured by further amendment, the FAC should be dismissed in its entirety with prejudice.

## II. <u>STATEMENT OF ISSUES PRESENTED IN THIS MOTION</u>

- Whether the Roku/Amazon Fire TV Plaintiffs lack Article III standing because the alleged injuries are not traceable to or redressable by Hisense;
- Whether all Plaintiffs lack Article III standing because the FAC fails to allege a concrete, particularized, or actual injury;
- Whether Plaintiff Reese fails to state a claim under Rule 12(b)(6); and
- Whether the Roku/Amazon Fire TV Plaintiffs fail to state a claim under Rule 12(b)(6).

## III. FACTUAL BACKGROUND

### A. Plaintiffs' Hisense TV hardware is controlled by various third-party OS.

Hisense manufactures hardware for Smart TVs that are sold in the United States. FAC ¶ 73; Qiang Bi Decl. ¶ 4. Plaintiffs Severino, Etchebarren, and Minner purchased Roku TVs, which run on Roku's OS. FAC ¶ 19, 37, 43. Plaintiff Cohen purchased an Amazon Fire TV, which runs on Amazon Fire OS. FAC ¶ 25. Plaintiff Reese purchased a Google TV, which runs on a Google TV OS that is customized by Hisense. FAC ¶ 31; Bi Decl. ¶¶ 5, 12. Each of these TVs is alleged to have ACR functionality. FAC ¶¶ 19, 25, 31, 37, 43. But as the FAC acknowledges, Hisense "contracts with Roku, Inc., Amazon.com Services LLC, Alphonso, Inc., and Nexxen International Ltd. for additional ACR and ad-tech functionality" installed on certain Hisense TV hardware. FAC ¶ 51. Specifically, ACR functionality on Roku ACR TVs is operated by Roku and subject to Roku's terms and policies. Bi Decl. ¶¶ 4, 9, 11. ACR functionality on Amazon Fire TVs is operated by Amazon and subject to Amazon's terms and policies. *Id*. ACR functionality on certain Google TVs is operated by a third-party ACR provider, Nexxen. Bi Decl. ¶¶ 5–6, 12–13. Those Google TV models are subject to Hisense's EULA and Enhanced Viewing Service policies. *Id.*

### B. Automatic Content Recognition (ACR) Technology.

ACR is a technology designed to capture information about content that is displayed on a television. FAC ¶¶ 80–81. ACR technology typically includes: (1) software that runs on a smart TV, captures portions of audio and/or video output on the smart TV, and converts those fragments into digital fingerprints; and software that runs outside the TV (*i.e.*, remotely), receives the digital fingerprints, and matches them against a database of known content. FAC ¶¶ 81–82; Bi Decl. ¶¶ 10, 18–19. The Hisense EULA, effective April 30, 2023, quoted at FAC ¶ 135, states that ACR "works by analyzing and matching onscreen audio sounds that come from [TVs] against an extensive database of programming content." Kiser Decl., Ex. 2. It also states that ACR "is an optional service" and that "[a customer] must opt-in to via [their] Device during the initial setup or any time after within the Device's 'Settings' menu" to enable ACR and "[the customers] may opt-in or opt-out of [ACR] at any time." Kiser Decl., Ex. 2; Bi Decl. ¶¶ 13–16. The Hisense End User Terms and Conditions, effective February 1, 2019, quoted at FAC ¶ 135, states the same: "[t]his

Device is shipped with [ACR] that is set to 'off' by default, meaning that it is disabled and will not collect and use SmartTV Viewing Data … unless and until [the customers] expressly Opt[s]-In." Kiser Decl., Ex. 1. It also details how to opt out: "Go to the 'Home' screen, select 'Settings', select 'System', select 'Advanced Settings', and Opt-Out by selecting the icon to turn off [ACR]." *Id.*

Hisense does not know if or how ACR is implemented by Roku or Amazon. Bi Decl. at ¶¶ 4, 9, 11. If they have any ACR functionality, it is proprietary to them, and no information is shared with Hisense. *Id*. Hisense also has no authority to make any changes to their consent flows. *Id*.

**C. Plaintiffs' Allegations against ACR Software.**

Plaintiffs allege that the "Sensitive Information" collected and derived by ACR functionality includes "(i) consumers' video-viewing activity and the specific content they watch; (ii) information displayed on the television screen during use; (iii) device-level and network identifiers, including IP addresses and persistent device identifiers; (iv) cross-device identifiers and linkages, including identifiers that associate the television with other devices and accounts; and (v) inferences drawn from the foregoing, including consumers' interests, habits, and personal characteristics." FAC ¶ 10. They further allege that ACR functionality "surreptitiously intercepted, transmitted, and disclosed [their] Sensitive Information." FAC ¶¶ 23, 29, 35, 41, 47. As discussed in further detail below, these allegations are demonstrably false.

Plaintiffs assert 14 causes of action: Invasion of Privacy (Intrusion Upon Seclusion; Public Disclosure of Private Facts; Violation of the California Constitution); Violation of the California Invasion of Privacy Act (CIPA) (Cal. Penal Code §§ 631; 632; 638.50–638.51; Violation of the Comprehensive Computer Data Access and Fraud Act (CDAFA); Violation of the Federal Wiretap Act; Violation of the Video Privacy Protection Act (VPPA); Negligence; Violation of California Unfair Competition Law; Violation of the Consumers Legal Remedies Act (CLRA); Unjust Enrichment; and Public Injunctive Relief on Behalf of the General Public.

For all the reasons set forth herein, all claims fail as a matter of law.

## IV. <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(1) motion to dismiss, Plaintiffs must establish all elements to support Article III standing, including injury-in-fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

(2016). Rule 12(b)(1) jurisdictional challenges can be facial or factual, and Hisense moves to dismiss the FAC under each avenue. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). For a factual challenge, "[a] district court may properly consider extrinsic evidence." *Dalfio v. Orlansky-Wax, LLC*, 2022 WL 3083323, at *1 (9th Cir. Aug. 3, 2022).

Hisense also challenges Plaintiffs' ability to state a claim for relief. Under Rule 12(b)(6), the Court should dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

## V. PLAINTIFFS DO NOT HAVE ARTICLE III STANDING

To establish the constitutional minimum for Article III standing, "a plaintiff must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). It is the "plaintiff['s] … burden of establishing these elements." *Spokeo*, 578 U.S. at 338.

### A. The Roku/Amazon Fire TV Plaintiffs lack Article III standing.

The Roku/Amazon Fire TV Plaintiffs lack Article III standing to assert claims against Hisense. To have Article III standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 550, 560 (1992) (internal quotations omitted). Here, there is no such causal connection. The Roku/Amazon Fire TV Plaintiffs' alleged injury is that ACR software on their TVs, for which Hisense simply provided the TV hardware, "surreptitiously intercepted, transmitted, and disclosed Sensitive Information." FAC ¶¶ 23, 29, 41, 47; Bi Decl. Decl. ¶ 4. That alleged injury is not traceable to or redressable by Hisense. Rather, the alleged injury centers on conduct by Roku or Amazon who design, implement, and control the ACR software (if any) on Roku and Amazon Fire TVs. Bi Decl. Decl. ¶¶ 4, 9, 11.

The FAC gives up the game by describing both Roku and Amazon "***separate, third-party*** recipient[s] of consumers' viewing communications, ***distinct from Hisense USA Corporation***."

FAC ¶¶ 142, 145 (emphasis added). Also, the FAC admits that the Roku TVs run on "the Roku OS operating system" on which "the ACR-derived viewing communications captured by the device are transmitted to and processed ***by Roku, Inc.*** in real time and incorporated into ***Roku's*** OneView/dataxu identity graph." FAC ¶¶ 21, 39, 45 (emphasis added). The FAC refers to this functionality as Roku's "own ACR pipeline." FAC ¶ 141. The FAC does the same for Amazon. FAC ¶¶ 27, 144. Indeed, the FAC does not allege any facts supporting any coordination between Hisense and Roku or Amazon as to the implementation of their ACR (and as discussed below, there is none). Because the FAC fails to allege a causal connection between Hisense hardware and the purported injury, it cannot withstand a facial challenge to Article III standing.

But even if the FAC could allege a causal connection to Hisense, a factual challenge to Article III standing surely defeats these claims. The accompanying declaration of Qiang Bi (a Hisense Director) confirms that the alleged injury caused is not traceable to or redressable by Hisense. *First*, Hisense has no non-public knowledge or control over whether or how Roku or Amazon implements ACR into their Smart TVs. Bi Decl. ¶¶ 4, 9, 11. *Second*, Hisense has no control over whether Roku or Amazon customers even enable ACR on their TVs. Because Hisense does not customize Roku or Amazon OS, no Hisense policies are shown during the setup or in the Settings of a Roku or Amazon Fire TV. *Id*. *Third*, Hisense does not receive any ACR data allegedly collected by Roku's or Amazon's ACR software (if any). *Id*.

As its best effort, the FAC alleges that Hisense TVs "ship[s] with" various operating systems, but then (falsely) avers that each "is configured by Hisense to enable ACR-based monitoring and to transmit viewing data to Hisense." FAC ¶ 89. Not only is this allegation expressly contradicted by Mr. Bi's Declaration, courts routinely (and rightly) reject Article III standing under similar circumstances. For example, in *Barrales et al v. Reckitt Benckiser LLC*, a plaintiff alleged harm based on their user data being collected and transmitted by a certain website. 2026 WL 2212867, at *2-3 (N.D. Cal. July 31, 2026). But this court granted the defendant's motion for lack of standing because the website was not owned or operated by the defendant. *Id*. The same is true here, where any alleged harm by Roku or Amazon ACR software is not attributable to Hisense.

**B. The FAC should thus be dismissed for lack of standing because Plaintiffs fail to allege any concrete, particularized, or actual injury.**

The FAC fails to allege an injury in fact for purposes of establishing Article III standing. A plaintiff must "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). A particularized injury "must affect the plaintiff in a personal and individual way" and a concrete injury must be "real"—not "abstract"—and "actually exist." *Id.* at 339-40. Plaintiffs have failed to allege any such injury here.

**(1) The FAC does not articulate a legally protected interest in the information allegedly captured by ACR software.**

The FAC alleges that ACR software deployed on Hisense TV hardware "surreptitiously intercepted, transmitted, and disclosed [Plaintiffs'] Sensitive Information during [their] use of the Hisense Smart TV (including the specific programs and content [they] viewed, applications [they] accessed, device-level identifiers, and [their] IP address." FAC ¶¶ 23, 29, 35, 41, 47.

It is "well established in the Ninth Circuit that there is no legally protected privacy interest in IP addresses." *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851 (N.D. Cal. 2025), *appeal dismissed*, No. 25-4990, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) (internal quotations omitted). And because there is no legally protected privacy interest in IP addresses, "there is no Article III injury based thereon." *In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026).

Moreover, the data the FAC terms "Sensitive Information" are indistinguishable from the types of browsing and device data that controlling Ninth Circuit authority has found insufficient to establish an injury in fact. In *Popa v. Microsoft Corporation*, the plaintiff alleged that a website operator used Microsoft's tracking technology to capture over 30 different categories of information related to user's website visit. 153 F.4th 784, 786 (9th Cir. 2025). These included: the date of the visit; the user's device, browser, and operating system; the country of access; the user's mouse movements; the user's screen swipes; text inputted by the user on the website; and how far down the webpage the user scrolled. *Id.* The Ninth Circuit affirmed dismissal of the plaintiff's

claim after finding that the collection and sharing of this user information with a third party did not create a cognizable injury for purposes of Article III standing. *Id.* at 792–94. Thus, as a matter of controlling law, collection of a user's browsing and device data is insufficient to establish an injury-in-fact. *Id.*; *see also Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023), *judgment entered*, 2023 WL 3016225 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim because "[p]laintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest"). That the browsing and device data here (*i.e.*, programs/content viewed, applications accessed, device identifiers, IP addresses) is allegedly captured from content viewed ***on a TV*** connected to the internet, rather based on a user's activity on a website viewed ***on a computer*** connected to the internet, does not compel a different result.

The FAC also alleges that the "viewing information" captured by third-party ACR software can "reveal information relating to: political preferences and affiliations; religious beliefs and practices; sexual orientation; health conditions and medical concerns; family composition, including the presence and ages of children; and age, socioeconomic status, and other demographic characteristics." FAC ¶ 99. But these allegations are purely speculative. *First*, as with public-facing websites, Plaintiffs have no reasonable expectation of privacy in their browsing data while watching publicly available content (or mass-distributed content) on their TVs. A similar argument was rejected in *Gouch, et al. v. Blue Cross Blue Shield Assn.*, 2026 WL 2283102, at *8–9 (N.D. Ill. Aug. 7, 2026), where the court held that data transmitted based on a consumer's use of public website did not "reveal any information about the plaintiff's own health conditions." *Second*, the FAC does not allege any facts to allege how a customer's "viewing information" is purportedly used to derive information about a customer's preferences and affiliations. *See Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) ("vague and generalized allegations of the type of data that [the trackers are] capable of collecting" are insufficient).

In sum, Plaintiffs lack Article III standing because the FAC fails to articulate a legally protected privacy interest in the so-called "Sensitive Information," because information like browsing and device data is not protectable as a matter of law.

**(2) Nor does the FAC allege any concrete injury to any Plaintiff.**

In addition to failing to articulate a legally protected privacy interest, the FAC fails to plead a cognizable injury predicted on alleged economic harm.

*First*, the FAC speculates asserts that "Sensitive Information" is used to "facilitate targeted advertisements for profit" or for "behavioral segmentation." FAC, *e.g.*, ¶¶ 55, 97, 100. But the FAC alleges no facts supporting any actual injury suffered by the Plaintiffs. For instance, there is no allegation of the Plaintiffs having received any targeted advertising, let alone any traceable to Hisense's conduct or even from the use of ACR data (which, as noted, Hisense never receives).

*Second*, the FAC is also premised on an incorrect allegation that ACR is enabled by default. As to Plaintiff Reese's Google TV, the allegation is controverted by Hisense policies that the FAC selectively quotes: "End User Terms and Conditions—specifically the End User Terms and Conditions effective February 1, 2019 and the End User License Agreement effective April 30, 2023." FAC ¶ 135.[2] Whether or not these policies apply to Plaintiff Reese's TV, as detailed above in § III.B, both policies state that ACR (*i.e.*, the EV Service) is "off" by default and that a user must expressly opt in. The FAC thus cannot allege injury on a false allegation that ACR is enabled by default, when the very policies the FAC quotes state the opposite.

*Third*, the FAC relies on a hypothetical economic-loss theory that this District has rejected. The FAC alleges that the so-called "Sensitive Information" has "independent economic value in the marketplace for consumer data." FAC ¶ 173. To support this allegation, the FAC points to "industry data" that allegedly confirms the value of "consumer data" generally. *See* FAC ¶¶ 174–177. But that "industry data" has no relationship to the "Sensitive Information." Further, even if the "Sensitive Information" has industry value, the FAC does not allege any economic loss to

[2] The FAC quotes these two Hisense policies (¶¶ 122, 135) but does not attach them. They are publicly available at https://www.hisense-usa.com/compliance/end-user-terms-and-conditions-(effective-date%3A-february-1%2C-2019) (last accessed September 3, 2026) and https://www.hisense-usa.com/compliance/end-user-license-agreement-(effective-date%3A-april-30%2C-2023) (last accessed September 3, 2026). Because the FAC quotes these policies to support its claims, they should be considered a part of the pleadings and Hisense should be able to rely on them in its Motion. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *5 (N.D. Cal. Sept. 26, 2024) (granting [defendant's] request to incorporate by reference policies referenced in the complaint).

Plaintiffs themselves—*e.g.*, that the Plaintiffs somehow lost the opportunity to sell the "Sensitive Information" or that the value of the "Sensitive Information" was somehow diminished after it was allegedly collected by ACR software. In these situations, "courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015). The FAC also alleges that Plaintiffs "would not have purchased the television at the price paid, or would not have purchased it at all." FAC ¶ 48. This theory fails, too—the FAC alleges no facts to support it, and there is no tie between this hypothetical overpayment theory and the alleged violations. Plaintiffs' economic-loss theory is therefore purely hypothetical and does not give rise to standing. *Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 931–32; *see also In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019).

Unable to articulate a concrete injury to Plaintiffs, the FAC resorts to inflammatory and speculative allegations that ACR software "continuously monitor[s] and analyze[s] what appears on the television" (FAC ¶ 7) and sharing that data with "Hisense's Chinese parents and affiliates" (FAC ¶ 21) "which are subject to Chinese law … compelling them to share that data with the Chinese government and the Chinese Communist Party ('CCP') on demand (FAC ¶ 2). Notably, the FAC frames the alleged harm as a "risk" that ACR data "may" be transferred to the People's Republic of China. FAC ¶¶ 125, 135. This is precisely the type of "conjectural or hypothetical" injury that *Spokeo* rejects. Plus, these allegations lack any factual basis.

As to ACR software on Roku. Google and Amazon Fire TVs, Hisense does not receive any data collected by the ACR software and therefore could not share that data with anyone. Bi Decl. ¶¶ 9, 11. Even as to Plaintiff Reese's Google TV, Nexxen's ACR software does not share any ACR data collected with Hisense. Bi Decl. ¶¶ 10, 21–22. Nor is it "continuously monitor[ing] and analyze[ing] what appears on the television." Rather, it collects digital "audio *samples only* (no video) from the content being viewed on the TV" and then converts the samples into digital audio fingerprints. Bi Decl. ¶ 18. The digital audio fingerprints "cannot be reversed to reconstruct the original audio." *Id*. That is, the digital audio samples collected by Nexxen's ACR software are akin to "metadata" that courts in this District have rejected as bases for Article III standing. *See, e.g.*,

*Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025), *appeal dismissed*, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) (dismissing claim because "[i]f Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data"). Finally, because Hisense does not receive or have access to any ACR data collected by Nexxen, it cannot share that data with any Chinese entities. Bi Decl. ¶¶ 10, 21–22.

In sum, even if Plaintiffs did have a legally protectible interest in the data they mischaracterize as "Sensitive Information," though they do not, the Court should still dismiss the FAC for failure to allege any concrete injury to Plaintiffs.

## VI. PLAINTIFFS FAIL TO STATE A CLAIM AGAINT HISENSE

Even if the Court finds that Plaintiffs have Article III standing to pursue claims against Hisense, each of them fails to state a claim against Hisense under Rule 12(b)(6).

### A. Plaintiff Reese Fails to State a Claim against Hisense

Plaintiff Reese fails to "state a claim to relief that is plausible on its face" against Hisense under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. The FAC alleges that Plaintiff Reese purchased a Google TV with Hisense hardware in approximately 2022, and that he was injured because "Hisense's ACR Tools and related tracking technologies surreptitiously intercepted, transmitted, and disclosed his Sensitive Information during his use of the Hisense Smart TV." FAC ¶ 35. The FAC further alleges that ACR software on Plaintiff Reese's TV "continues to intercept, collect, transmit, and disclose [his] viewing activity and associated identifiers in real time and near-real time to the present day." FAC ¶ 498. Hisense disputes these allegations but accepting them as true for purposes of this motion, based on the Hisense policies the FAC selectively cites (*see supra* n. 2), Plaintiff Reese would have had to enable (*i.e.*, *opt into*) his data being collected in order to optimize his TV viewing via the EV Service. The FAC's allegation that "ACR functionality is enabled by default" is contradicted by the very policies the FAC quotes, which as explained above in § V.B.(2), state that the EV Service is off by default and that a user has to opt in to enable it.[3]

[3] Mr. Bi's Decl. confirms that (1) the consent flow calls the user to separately evaluate and accept the EULA and the Enhanced Viewing Service, (2) the user can review the terms of these policies before consenting, and (3) the user can make an informed choice. *See* Bi Decl. ¶¶ 12–16.

Because Plaintiff Reese must have consented to the EV Service, all of his claims in the FAC should be dismissed.[4] Bi Decl. ¶¶ 12–17.

**B. The Roku/Amazon Fire TV Plaintiffs Fail to State a Claim**

The Roku/Amazon Fire TV Plaintiffs also fail to "state a claim to relief that is plausible on its face" against Hisense under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. To state a claim, Plaintiffs must plead factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**(1) They fail to state a claim for violation of CIPA (Counts IV, V, VI)**

The Roku/Amazon Fire TV Plaintiffs fail to state a claim a CIPA claim for several reasons. Plaintiffs' CIPA claims are directed to Smart TVs, which the FAC alleges are "internet-connected devices capable of running streaming applications, connecting to external media devices, and interacting with other smart devices within a consumer's home." FAC ¶ 74. The FAC also alleges that ACR software installed on these Hisense Smart TVs "access[es] and display[s] audiovisual content transmitted over the internet and other communications networks," and "intercept[s] Plaintiffs' communications while they were in transit." FAC ¶¶ 301–302.

**a) Section 638.51 does not apply to internet-connected devices**

As a threshold issue, the Roku/Amazon Fire TV Plaintiffs fail to state a claim because their allegations are directed to internet communications. Many California courts that have analyzed Section 638.51, including its plain language and legislative history, have concluded that it does *not* apply to internet-based allegations. *See, e.g.*, *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (reviewing "the legislative history of the CIPA" and concluding that Section 638.51 "refer[s] to devices . . . used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites"); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (declining to apply Section 638.51 to the internet; to do so "would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability").

[4] As noted, Plaintiff Reese is required to individually arbitrate his claims in any event.

The courts arrived at this conclusion with good reason: Section 638.51 makes no mention of internet conduct at all. Plus, the terms of CIPA's "pen register" and "trap and trace" provision, when "construed with reference to the whole system of law of which it is a part," *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003), show it only applies to tracking telephone numbers. For example, the definition of a "trap and trace" device in Penal Code § 638.50(c) refers to capturing "the *originating number* or *other* dialing, routing, addressing, or signaling information." (emphasis added). The term "originating number" both qualifies the remainder of this clause and plainly refers to a telephone number. Section 638.52(d)(3) also requires any court order authorizing the installation or use of a pen register or trap and trace device to "specify … *[t]he number* and, if known, physical location of the *telephone line* to which the … trap and trace device is to be attached[.]" (emphasis added).

Moreover, courts need not expand CIPA to regulate internet conduct because another statute already does. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring) (observing that the California Consumer Privacy Act of 2018 (the "CCPA") provides recourse). The CCPA already governs how third parties may access or process online data, what disclosures to consumers are required, and what specific rights consumers have with respect to accessing and disclosing their online personal information. *See, e.g.*, Cal. Civ. Code §§ 1798.100 (obligations of businesses), 1798.135 (uses of consumer information). In fact, the Legislature has amended CIPA multiple times, including since it enacted the CCPA, and has declined to expand its trap and trace provision to apply to the transmission of data between computers. *See Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1080 (C.D. Cal. 2023) ("[t]he fact that the Legislature has had an opportunity to amend section 631(a) to take into account privacy issues raised by new technologies like internet messaging is indicative of its intent not to expand protections").

Finally, in light of the unresolved ambiguity about CIPA's application, because CIPA is a criminal statute, the rule of lenity requires that the Court resolve such ambiguity in defendants' favor. *See Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) (applying the rule of lenity to a different provision of CIPA). Such a resolution requires excluding the internet from the scope of Section 638.51, at least until the Legislature says otherwise.

**b) Plaintiffs have not identified "signaling information"**

Even if CIPA could apply to internet-enabled devices, the Roku/Amazon Fire TV Plaintiffs still do not state a claim for violation of CIPA's pen register or trap and trace provisions. Section 638.51 applies to the unlawful collection of "signaling information" attached to "communications," not the communications themselves. Cal. Penal Code § 638.50(b)-(c). That "signaling information" must be "reasonably likely to identify the source of a wire or electronic communication, but not the contents of the communication." *Id.* The FAC alleges that "signaling information" in this context includes "identifiers associated with content being requested or displayed, application identifiers and usage signals, device identifiers and network information, and other metadata reflecting how, when, and from where communications were transmitted." FAC ¶ 346. The FAC also alleges that ACR software "captured audio and/or audiovisual information from content displayed on the television screen." FAC ¶ 357. This is not "signaling information reasonably likely to identify the source of a wire or electronic communication." As discussed above, Hisense has no knowledge of how ACR in Roku and Amazon Fire TVs works (if any) but accepting the FAC's allegations as true for purposes of this motion, the "captured audio and/or audiovisual information from *content* displayed on the television screen" would be the alleged "communications" themselves, not "signaling information" related to "communications." In any event, neither the alleged "communications" (*i.e.*, the content streamed to and displayed on the Plaintiffs' TV) nor the "audio and/or audiovisual information" captured from those "communications" belong to Plaintiffs. Plaintiffs have thus not alleged any unlawful collection of information to which they have a legally protected right.

**c) Plaintiffs have not identified a "pen register"**

The FAC alleges in conclusory fashion that ACR software "functioned as pen registers." FAC ¶ 344. But that simply cannot be true. As the FAC correctly states: "A 'pen register' is defined under California law as a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility *from which a wire or electronic communication is transmitted*." FAC ¶ 340 (emphasis added). ACR software cannot be shoehorned into that definition. A traditional pen register captures the phone numbers that a person *dials* (not their own phone number). In this context, the equivalent would be the identity of the device sending

content to be displayed on the Plaintiffs' TVs (*e.g.,* IP address). This is nonsensical. *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *2 (Cal. Super., Jan. 28, 2025) ("[t]he analog of the number dialed by a telephone here is *th*e IP address and related information of a website accessed by a computer—but not the computer's own IP address or identifying information"). Plaintiffs cannot state a claim based on an IP address, let alone an IP address of someone else's device.

**d) Plaintiffs do not state a claim for "eavesdropping"**

The FAC also fails to allege facts to state a claim under CIPA § 632. CIPA § 632 prohibits any person, without the consent of all parties to a confidential communication, from intentionally eavesdropping upon or recording the confidential communication by means of any electronic amplifying or recording device. Here, the FAC does not allege "confidential communications" nor any "intentional eavesdropping" of any such communications. The FAC instead points to "audiovisual transmissions delivered through streaming applications, broadcast signals, and external devices connected via HDMI." FAC ¶ 322. Such audiovisual transmissions are not "confidential communications" under § 632. Content providers transmit or make available the same programming to a broad audience—*e.g.*, subscribers of a streaming service. To be sure, the FAC alleges that "[t]he communications occurred within private residences" (FAC ¶ 328) but that conflates the location of the viewer with the nature of the communication. Indeed, if the same TV were set up in a less private environment, under Plaintiffs' logic, the FAC's allegation would fail. At bottom, neither a content provider nor an individual viewer could reasonably expect content streamed to one TV among millions to be "confidential." *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-777 (2002) ("a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded"); *see also In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 899 (N.D. Cal. 2026) (holding that device-to-server transmissions are not confidential communications under § 632).

**e) CIPA does not apply extraterritorially**

Plaintiffs cannot state a CIPA claim for conduct exclusively occurring outside of California, under the extraterritoriality principle. CIPA does not include any language to suggest that is applies outside California. *See Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 248 (2010) ("When a

statute gives no clear indication of an extraterritorial application, it has none.”). Under California law, an offense is committed in the location where “the conduct which gives rise to liability” occurs. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999); *Sexton v. Spirit Airlines, Inc.*, 2023 WL 1823487, at *1 (E.D. Cal. Feb. 8, 2023) (dismissing claim brought where material conduct occurred outside of California).

The FAC contains several wildly speculative allegations about Hisense or third-party ACR software sharing data with “Hisense’s Chinese parents and affiliates” (FAC ¶ 21) “which are subject to Chinese law … compelling them to share that data with the Chinese government and the Chinese Communist Part (‘CCP’) on demand (FAC ¶ 2). To the extent Plaintiffs’ CIPA claims are based on alleged disclosure of ACR data to the Chinese, those claims fail. Similarly, the FAC references “remote servers” to which ACR data is allegedly transmitted (*e.g.*, ¶¶ 31, 343. 385) but does not identify the remote servers’ locations. To the extent Plaintiffs’ CIPA claims are based on these “remote servers,” which are presumably outside California, the claims fail for that reason, too.

**(2) They fail to state a claim for invasion of privacy (Counts I, II, III)**

For the reasons explained in § V.B.1 above, the Roku/Amazon TV Plaintiffs lack a legally protectable privacy interest in the data allegedly captured by ACR software.

Plaintiffs also lack a reasonable expectation of privacy over their browsing and device data. Courts considering alleged data collection have confirmed “there is no reasonable expectation of privacy when the data collection is within users’ common-sense expectation or when the information is not sensitive.” *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022). The FAC simply concludes, without any factual basis, that “[a] reasonable consumer would not expect that a television would continuously monitor and record the content displayed on its screen for the purpose of data collection and advertising” (FAC ¶ 239) or “that a television manufacturer would collect and disclose detailed information about their viewing habits to third parties” (FAC ¶ 266). These conclusory allegations are controverted by “common-sense expectations” of a consumer of a smart TV. As the FAC acknowledges, a smart TVs, as compared to a traditional or non-smart TVs, are “internet-connected devices capable of running streaming applications, connecting to external media devices, and interacting with other smart devices within

a consumer's home." ¶ 74. A reasonable consumer of a smart TV would thus expect that streaming applications running on the TV would be aware of the TV's identity (*e.g.*, its identifier), its network connectivity (*e.g.*, its IP address), and the consumer's viewing habits. In fact, collecting information about consumer viewing habits is not unique to smart TVs—even in the age of traditional or "non-smart" TVs, viewing habits were collected and analyzed by advertising companies and the like.

Additionally, the FAC offers no facts to support its conclusory allegation that "Hisense's intrusion into Plaintiffs' private affairs would be highly offensive to a reasonable person." FAC ¶ 238. "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Plus, as discussed above in § V.A, the alleged "invasions" are conducted by Roku or Amazon, not Hisense. And even so, courts "have held that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090. The FAC does not allege any facts to overcome these deficiencies.

**(3) They fail to state a violation of the Federal Wiretap Act (Count VIII)**

The Roku/Amazon Fire TV Federal Wiretap Act claim also fails.

*First*, the Federal Wiretap Act is analyzed under the same substantive framework as CIPA Section 631(a). *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). Thus, the reasons discussed above in § VI.B.(1) also doom Plaintiffs' Federal Wiretap Act claim.

*Second*, the Federal Wiretap Act "contain[s] an exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026–28 (N.D. Cal. 2014) (consent is a complete defense). Here, the FAC alleges that Hisense allegedly included third-party ACR software in Hisense TVs. Accepting this to be true for purposes of this motion, Hisense consented to ACR software capturing data and thus cannot be liable for a Federal Wiretap Act claim.

*Third*, the FAC's reliance on the crime-tort exception fails. This exception only applies when "the purpose for the interception—its intended use—was criminal or tortious." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022). Plaintiffs must allege that either the "primary motivation or a determining factor in [the defendant's] actions has been to injure

plaintiffs tortiously." *Id.* at 797 (internal quotations omitted). But the FAC alleges no such facts, and in fact, pleads the opposite: ACR is intended for "***commercial purposes***, including targeted advertising, audience segmentation, identity-graph construction, and measurement," and "Hisense also used and disclosed the contents of these communications for its own ***commercial purposes***, including advertising, analytics, and profiling," not any criminal or tortious purpose. FAC ¶¶ 14, 394 (emphases added). These "commercial purposes" do not invoke the crime-tort exception.

To the extent Plaintiffs invoke the Federal Wiretap Act's crime-tort exception based on the DOJ Rule and rank speculations as to possible disclosure to the Chinese government (FAC ¶¶ 401-404), that too fails. *First*, the DOJ Rule is enforced by the DOJ, not by private litigants in civil lawsuits. *Second*, the FAC fails to allege any facts to show that the "intended use" of ACR functionality was to disclose ACR data to the Chinese government. It is not—as discussed above, the FAC expressly alleges that this technology was intended for "commercial purposes." At any rate, as discussed above in § V.B.2, the FAC's allegations are completely unsubstantiated. They should be rejected "as implausible" as they are "too speculative to warrant further factual development." *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1120 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) (*citing Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013)).

*Third*, the FAC fails to identify any "electronic communications" that are "intercept[ed]." The FAC alleges that the "electronic communications" are "streaming video content, audiovisual transmissions, application data, and communications between Plaintiffs' Smart TV and remote servers." FAC ¶ 385. The FAC then incorrectly alleges that these "electronic communications" were intercepted "while the communications were in transit, and before they reached their intended destination in a competed and static form." FAC ¶ 391. As a threshold matter, for Roku and Amazon Fire TVs, any alleged "interception" was performed by Roku or Amazon ACR software, as discussed above in § V.A. Further, the FAC alleges that ACR software "continuously monitor[s] and analyze[s] what appears on the television screen." *E.g.*, FAC ¶ 7. Even accepting this allegation as true for purposes of this motion, if ACR software is capturing content that "appears on the television screen," the content has already reached its destination and is not being "intercepted."

**(4) They fail to state a violation of CDAFA (Count VII)**

The CDAFA only applies when the defendant's alleged access is "without permission." *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011). "Section 502 defines 'access' in terms redolent of 'hacking' or breaking into a computer." *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007). To satisfy this element, Plaintiffs would have to allege that Hisense accessed Plaintiffs' data "in a manner that over[came] technical or code-based barriers.'" *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). They cannot—Plaintiffs voluntarily purchased, set up, and used their TVs. *See* FAC, § II.

**(5) They fail to state a violation of VPPA (Count IX)**

Under the VPPA, it is unlawful for a "video tape service provider" to "knowingly disclose[], to any person, personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b)(1). "[I]n order to plead a plausible claim under [the VPPA], a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer[sic]' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Here, Plaintiffs' VPPA claim fails for multiple reasons.

*First*, Hisense is not a "video tape service provider." Hisense manufactures and sells TV hardware; it does not create or provide video content. Yet, the FAC tries to shoehorn Hisense into the definition of "video tape service provider" by alleging that Hisense "is engaged in the business of delivering video consumers, including through its Smart TV platform, which provides access to on-demand streaming services and Hisense's own video content offerings." FAC ¶¶ 187, 415. This reading is contrary to the statute's intent. Interestingly, to allege that "Congress made clear that the VPPA applies to modern technologies," the FAC quotes the following from a Senate Report: "'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows ***on televisions***, laptop computers, and cell phones." FAC ¶ 183 (emphasis added). This quote differentiates between "on-demand cable services and Internet streaming services" and the devices on which these services can be used, such as TVs. Hisense, as a TV hardware manufacturer, falls into the latter category and is not a "video tape service provider."

*Second*, the FAC fails to allege that any disclosure involved Plaintiffs' "personally

identifiable information." § 2710(b)(1). At best, the FAC alleges that ACR tools disclose "consumers' video-viewing activity—including the specific programs and content viewed—along with persistent identifiers such as IP addresses, device identifiers, and other data that enable those viewing selections to be associated with a particular individual or household." FAC ¶ 188. But the FAC fails to plead how this information can be used to identify Plaintiffs personally. The FAC also fails to plead that there was an actual disclosure of this information that would allow a third party to identify Plaintiffs individually, as required to state a VPPA claim. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (affirming dismissal of VPPA claim because of the absence of any allegations that disclosed data could be used to "identify an individual").

**(6) They fail to state a claim for negligence (Count X)**

Negligence is only viable if there was a cognizable duty, a breach of that duty, proximate causation, and damage. *See Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1063 (N.D. Cal. 2015) (finding allegations insufficient to support a cause of action for negligence). The FAC fails to plead a cognizable duty owed by Hisense to Plaintiffs as to data collected by third-party ACR software. Per the FAC, Hisense had to duty to be "active" in the "design and operation" of that proprietary, third-party ACR software. FAC ¶ 441. That is not the law; imposing such a duty would yield an absurd result whereby hardware manufacturers could never allow implementation of any software by third parties on their machines. In any event, Hisense has no ability, let alone duty, to control whether and how Google, Roku or Amazon implement ACR software.

**(7) They fail to state a claim for equitable relief (Counts XI, XII, XIII)**

The Roku/Amazon Fire TV Plaintiffs' claims for equitable relief also fail.

*First,* state law claims for equitable relief may not proceed in a federal action where there exists an adequate legal remedy in the form of money damages. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1311–12 (9th Cir. 2022). An adequate legal remedy exists even if the damages claim ultimately fails on the merits. *Id.* at 1311. Here, Plaintiffs contend that they are entitled to *inter alia* significant statutory damages for their CIPA and Federal Wiretap Act claims, which arise from the same facts on which Counts XI, XII, and XIII are based. Because Plaintiffs have an adequate legal remedy, their claims seeking equitable relief must be dismissed.

*Second,* Plaintiffs allege without basis that they "lost money or property." FAC ¶¶ 479, 482. As discussed above in § V.B.2, Plaintiffs fail to state a claim based on an economic-loss theory.

**(8) They do not actually request public injunctive relief (Count XIV)**

The FAC's claim for public injunctive relief on behalf of the general public should be dismissed because (a) injunctive relief is a remedy, not a claim, and (b) the FAC does not actually seek public injunctive relief. Plaintiffs seek an injunction "enjoining Hisense from deploying, operating, or enabling ACR technology" on Hisense TVs. FAC at 98–99. This injunction does not constitute *public* injunctive relief because it only stands to benefit customers who purchased Hisense TVs —"*i.e.*, by definition [it] will only benefit a group of individuals similarly situated to the plaintiff[s]." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 549 (9th Cir. 2021).

## VII. THE DEFICIENCIES IN THE FAC CANNOT BE CURED

The Court should grant Hisense's Motion and dismiss Plaintiffs' claims without leave to amend. Plaintiffs have already amended once, and the deficiencies identified in this Motion cannot be cured through further amendment. *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994) (leave to amend "need not be granted where the amendment of the complaint would … constitute[] an exercise in futility") (citation omitted). *First*, Plaintiffs cannot cure their Article III standing deficiency because their claims are directed to third-party ACR software. *Second*, none of the Plaintiffs have alleged a sufficiently concrete injury to confer Article III standing. *Third*, the Plaintiffs have failed to state any claim against Hisense.

## VIII. CONCLUSION

For the foregoing reasons, Hisense respectfully requests that this Court grant this Motion without leave to amend and enter judgment in Hisense's favor.

DATED: September 15, 2026

**KING & SPALDING LLP**

By: */s/ Livia M. Kiser*
LIVIA M. KISER
MICHAEL D. ROTH
SAMUEL C. CORTINA
Attorneys for Defendant
HISENSE USA CORPORATION